15-949-cv
*Grenawalt v. AT&T Mobility LLC*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of March, two thousand sixteen.

PRESENT:   JOSÉ A. CABRANES,
           DEBRA ANN LIVINGSTON,
           GERARD E. LYNCH,
                     *Circuit Judges.*

---

JOHN GRENAWALT, CARLOS MIRANDA, JULIO ALICEA,
ON BEHALF OF THEMSELVES AND ALL OTHERS
SIMILARLY SITUATED,

              *Plaintiffs-Appellants,*                    15-949-cv

              v.

AT&T MOBILITY LLC,

              *Defendant-Appellee.**

---

**FOR PLAINTIFFS-APPELLANTS:**          John A. Beranbaum and Jason Rozger,
                                        Beranbaum Menken LLP, New York, NY.

**FOR DEFENDANT-APPELLEE:**             Carmen Beauchamp Ciparick, Greenberg
                                        Traurig, LLP, New York, NY; Kristine

---

* The Clerk of the Court is directed to amend the caption as set forth above.

1

Jayne Feher and Raquel S. Lord, Greenberg Traurig, LLP, Florham Park, NJ.

Appeal from a judgment of the United States District Court for the Southern District of New York (Andrew L. Carter, Jr., *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court be and hereby is **VACATED and the case REMANDED**.

Plaintiffs-appellants ("plaintiffs") appeal from an April 2, 2013 order granting a motion for summary judgment by defendant-appellee AT&T Mobility LLC ("AT&T"), made appealable pursuant to an entry of partial final judgment on March 10, 2015. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

Plaintiffs are security guards who brought claims against the following defendants, alleging that they withheld wages in violation of the Fair Labor Standards Act of 1938 ("FLSA") and New York Labor Law ("NYLL")[1]: AT&T, in whose stores plaintiffs provided (and in some cases still provide) security; Gladius, Inc. ("Gladius"), a now-defunct security firm hired by AT&T; Centuria, Inc. ("Centuria"), Gladius's alleged successor in interest; and Alpha-Omega Protection Services Corp. ("A-O") and its principal, Grace DePompo ("DePompo"), who directly employed plaintiffs, and who subcontracted with Gladius to provide guards for AT&T stores. Of these, only AT&T is a party to this appeal.

We review an award of summary judgment *de novo*, affirming "only if the evidence, viewed in the light most favorable to the party against whom it is entered," demonstrates the absence of genuine issues of material fact. *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 140 (2d Cir. 2008). Because determining joint employment is "fact-intensive," awards of summary judgment on this issue, although sometimes appropriate, are rare. *See id.* at 143–44.

The question presented is whether AT&T qualifies as plaintiffs' joint employer within the meaning of FLSA. Because FLSA defines "employer" broadly, we have "treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis" by looking to the "'economic reality' of a particular employment situation." *Id.* at 141–42. We have developed three tests—or, more accurately, three sets of factors—to guide our determination of whether a joint employment relationship exists. *Id.* at 142–43.

---

[1] Plaintiffs do not argue their NYLL claims separately. We omit any discussion of the various cross- and counter-claims not at issue on this appeal.

The first test, derived from *Carter v. Dutchess Community College*, 735 F.2d 8 (2d Cir. 1984), looks to whether a putative employer exercises "formal control" over a worker. *See Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 72 (2d Cir. 2003). Because *Carter* defines employment more narrowly than FLSA requires, satisfying this test is sufficient, but not necessary, to show joint employment. *Id.* at 71. The second test, set out in *Brock v. Superior Care, Inc.*, 840 F.2d 1054 (2d Cir. 1988), focuses on whether "the workers depend upon someone else's business . . . or are in business for themselves," *id.* at 1059, and thus is "typically more relevant for distinguishing between independent contractors and employees," *Velez v. Sanchez*, 693 F.3d 308, 326 (2d Cir. 2012), than for determining by whom workers who are assumed to be employees are employed.

Accordingly, this case hinges on a third test, first developed in *Zheng v. Liberty Apparel Co.*, 355 F.3d at 61, which weighed six factors in determining whether a garment manufacturer exercised "functional control" over subcontracted workers, and was therefore their employer under FLSA:

> (1) whether [the manufacturer's] premises and equipment were used for the [putative employees'] work;
>
> (2) whether the Contractor[s] . . . had a business that could or did shift as a unit from one putative joint employer to another;
>
> (3) the extent to which [the putative employees] performed a discrete line-job that was integral to [the manufacturer's] process of production;
>
> (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes;
>
> (5) the degree to which the [manufacturer] or [its] agents supervised [the putative employeers'] work; and
>
> (6) whether [the putative employees] worked exclusively or predominantly for the [manufacturer].

*Id.* at 72. *Zheng* emphasized that these factors were "nonexclusive and overlapping," *id.* at 75, and that a court "need not decide that *every* factor weighs against joint employment" in order to grant summary judgment for the putative joint employer, *id.* at 77 (emphasis in original). In assessing whether an entity is a joint employer, the determination of "the historical findings of fact that underlie each of the relevant factors" and "the findings as to the existence and degree of each factor" are "findings of fact," while "the conclusion . . . to be drawn from applying the factors, *i.e.*, whether an entity is a joint employer," is a question of law. *Id.* at 76.

Applying the *Zheng* factors to the present case indicates that the District Court erred in awarding summary judgment to AT&T.

3

***1. Whether AT&T's premises and equipment were used for plaintiffs' work***

The District Court rightly found that there was a material question of fact whether this factor weighed in favor of joint employment, since plaintiffs worked at AT&T stores.

***2. Whether A-O had a business that could or did shift as a unit from one employer to another***

There is also a material question of fact whether this factor weighs against joint employment. The District Court misapplied *Zheng* by asking "[w]hether the *Plaintiffs* had a business that could or did shift as a unit." *Grenawalt v. AT&T Mobility, LLC*, 937 F. Supp. 2d 438, 452 (S.D.N.Y. 2013) (emphasis supplied) (alteration omitted). But *Zheng* looked to whether the *contractor*—in this case, A-O—could shift its employees from one employer to another. *See Zheng*, 355 F.3d at 72; *see also Barfield*, 537 F.3d at 145 (asking whether any "referral agency shifted its employees as a unit from one hospital to another"). Here, A-O essentially existed only to serve AT&T, via Gladius. DePompo formed A-O in anticipation of Gladius's contract with AT&T; Gladius financed A-O's entire payroll; A-O sent all of its guards to AT&T's stores, except for a one-guard, two-month detail for one other client; and A-O went out of business after losing its subcontract with AT&T. Although A-O may have had the theoretical ability to service other customers, as a practical matter it depended entirely on Gladius, and indirectly on AT&T.

***3. The extent to which plaintiffs performed a discrete line-job that was integral to AT&T's business***

There is, again, a question of material fact whether this factor weighs against joint employment. On one hand, the absence of guards at some AT&T stores, as well as the fact that such guards arguably possess "specialized skills" distinct from those of ordinary retail employees, weighs against joint employment. *Cf. Zheng*, 355 F.3d at 73. On the other hand, several considerations might weigh in the other direction, including the testimony of some guards that they understood their function to include greeting customers and otherwise assisting store managers; the near-permanence of guards at certain stores for years on end; and the general job duties of security guards (which testimony indicated including letting employees into stores in the morning and escorting them out in the evenings). Though on balance we agree with the District Court that the evidence weighs against a finding of joint employment, we believe that the conclusion is not warranted as a matter of law. In any case, a worker's job need not be "indispensable" for this factor to weigh in favor of joint employment, as the District Court suggested, *see Grenawalt*, 937 F.Supp.2d at 453.

### 4. Whether responsibility under the contracts could pass from one subcontractor to another without material changes

We also find that there is a material question of fact whether this factor weighs against joint employment. The relevant question is whether "the *same* employees would continue to do the *same* work in the *same* place," regardless of who has responsibility for the contract. *See id.* at 74 (emphases in original). Here, Centuria replaced Gladius as AT&T's security contractor in 2011. Centuria then subcontracted with Stone Security, rather than A-O, to provide guards. Although these transitions mostly resulted in the hiring of new guards, several plaintiffs worked at AT&T's stores under both A-O and Stone. At the same time, Stone imposed stricter requirements and paid less than A-O, which suggests a degree of differentiation between contractors. Viewing this evidence in the light most favorable to plaintiffs, however, it seems possible that "responsibility under the contracts could pass from one subcontractor to another without material changes," *Zheng*, 355 F.3d at 74.

### 5. The degree to which AT&T or its agents supervised plaintiffs' work

There is, again, a question of material fact whether this factor weighs against joint employment. The relevant question is whether AT&T exercised "effective control of the terms and conditions of [plaintiffs'] employment," rather than merely "supervision with respect to contractual warranties of quality and time of delivery." *Id.* at 75. Here, plaintiffs' day-to-day work was supervised mostly by AT&T store managers, not by Gladius or A-O. On the basis of the testimony of Amadeus Santos, an AT&T employee, and the presence of AT&T's letterhead at the top of the orders, a reasonable jury could conclude that AT&T originated "post orders" that DePompo distributed to the guards in and after 2007. The 2007 version of these orders provided, *inter alia*, that guards should report "incidents" to the store manager, "follow[ ] emergency response proceedings [sic] as prescribed by the store manager," take breaks at times and places allowed by the store manager, and—perhaps most importantly—detain suspected shoplifters only with the store manager's approval. J.A. 295–97. A 2010 version of the post orders, which DePompo testified she created in concert with Gladius by relying heavily on the 2007 orders and which were similar in all material respects to those orders, was also distributed to the guards. A-O, in contrast, usually did little more than verify (by telephone or text message) that plaintiffs had arrived at work. The principal evidence weighing against joint employment under this factor is that A-O, not AT&T, set plaintiffs' schedules. Even in this respect, however, the evidence is mixed, since AT&T at least occasionally modified guards' hours.

### 6. Whether plaintiffs worked exclusively or predominantly for AT&T

As the District Court rightly found, this factor strongly favors a finding of joint employment, since plaintiffs worked almost entirely at AT&T stores.

### 7. *Summary*

Viewing the evidence in the light most favorable to plaintiffs, no *Zheng* factor weighs against joint employment as a matter of law. This Court has sustained a jury verdict of joint employment when as many as three *Zheng* factors weighed against joint employment as a matter of law. *See Zheng v. Liberty Apparel Co.*, 389 F. App'x 63, 64 (2d Cir. 2010) (summary order). It seems possible, then, that a reasonable jury could find, under the facts of this case, that AT&T was plaintiffs' joint employer for purposes of FLSA. We therefore conclude that the District Court erred in awarding summary judgment to AT&T.

## CONCLUSION

We have reviewed all of the remaining arguments raised by the parties on appeal and find them to be without merit. For the foregoing reasons, we **VACATE** the judgment of the District Court and **REMAND** the case for trial.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk